IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated, | Case No. 24-6277 |
| *Plaintiff*, | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **LIFEMD, INC. d/b/a RexMD** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Asher Bronstin ("Plaintiff" or "Mr. Bronstin") brings this Class Action Complaint and Demand for Jury Trial against Defendant LifeMD, Inc. d/b/a RexMD ("Defendant" or "Rex") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.  The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Rex violated the TCPA by sending telemarketing text message calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

**PARTIES**

4.  Plaintiff Asher Bronstin is an individual.

5.  Defendant LifeMD, Inc., which does business under the name RexMD, is a corporation incorporated in Delaware and having its principal place of business in this District.

**JURISDICTION AND VENUE**

6.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47

U.S.C. § 227 *et seq*.

7. This Court has general personal jurisdiction over Rex because the company has its headquarters and principal place of business in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the text message calls at issue were orchestrated and sent from this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the messages at issue.

15. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

16. Plaintiff's telephone number, (714) XXX-XXXX, is a residential, non-commercial telephone number.

17. Mr. Bronstin uses the number for personal, residential, and household reasons.

18. Mr. Bronstin does not use the number for business reasons or business use.

19. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there on February 3, 2021, more than 31 days prior to the calls at issue.

21. Plaintiff has never been a customer of Rex.

22. Despite this, the Plaintiff received at least forty-three text message calls from Rex between November 21, 2022 and present from the SMS "short code" 61868.

23. These text messages, some of which included sexually explicit and provocative text and images, all attempted to get the Plaintiff to purchase Viagra.

24. The text message calls were unwanted.

25. The text message calls were nonconsensual encounters.

26. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text message calls.

27. Plaintiff never provided his consent or requested the text message calls.

28. Plaintiff and the Class have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

29.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

30.  Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase of Rex's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

31.  **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

32.  **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

33.  **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

34.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over

any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

    a.    Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b.    Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    c.    Whether Defendant should be held liable for violations committed on its behalf, if any; and

    d.    Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

35.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

36.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.  Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d.  Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

37.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

38.  It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

39.  Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

40. These violations were willful or knowing.

41. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

42. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the National DNC Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 20th day of August, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687 (*Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com